UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FRANCIS TSYAMBA,<br><br>                Petitioner,<br>    v.<br><br>LAURA HERMOSILLO, *et al.*,<br><br>                Respondent. | CASE NO. 2:25-cv-02623-GJL<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Francis Tsyamba ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On December 29, 2025, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. §2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 8, 10.

---

[1] The Petition was initially joined by Petitioner Luis Enrique Arreola Sereno. However, Mr. Arreola Sereno accepted a final removal order to end his detention on January 12, 2026, and Petitioner Arreola Sereno agreed to his dismissal without prejudice from the Petition. *See* Petitioner's Notice Regarding Petitioner Luis Enrique Arreola Sereno, Dkt. 11. Therefore, the Court **GRANTS** his dismissal **without prejudice** from the Petition accordingly.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition.

## I.   BACKGROUND

Petitioner is a citizen of Kenya who entered the United States on or about April 24, 2024. Dkt. 1; Dkt. 8-1.[2] Petitioner entered with a B1/B2 visa that United States Customs and Border Protection ("CBP") cancelled upon his arrival. Dkt. 1 at 3; Dkt. 2-1. That same day, Petitioner was detained and processed for expedited removal. Dkt. 1 at 6; Dkt. 8 at 3. Petitioner alleged fear of return to Kenya so CBP referred him to U.S. Citizenship and Immigration Services ("CIS") for a credible fear interview. Dkt. 8-1 at ¶ 5.

On May 14, 2024, CIS made a positive credible fear determination. *Id.* at ¶ 6. On May 24, 2024, ICE issued Petitioner an Interim Notice Authorizing Parole and released him from custody. *Id.* at ¶¶ 7–8; Dkt. 2-2. Petitioner traveled to Spokane, Washington, with the intent to reside there. Dkt. 3 at ¶ 3. Petitioner alleges, and Respondents do not dispute, that he fully complied with the requirements of his parole by updating his address as soon as possible, attending every ICE check-in and appointment, and sending a weekly photograph of himself through ICE's biometrics application. *Id.* at ¶¶ 3–4.

On July 8, 2024, Petitioner attended a required Office of Enforcement and Removal Operations ("ERO") check-in and was enrolled in the Alternatives to Detention ("ATD") program for reporting and monitoring while Petitioner remained on the non-detain immigration

---

[2] The Court notes Petitioner's objection to the unsupported declarations attached to the Respondents' Return for lack of personal knowledge. Dkt. 10 at 5 n.4. It seems the objection focuses primarily on the sufficiency of the declarations to establish Petitioner Arreola's alleged lack of compliance with ICE parole requirements. *Id.* As Petitioner Arreola's claims are no longer before the Court, requiring Respondents to cure the alleged deficiencies in the declarations would only prejudice Petitioner Tsyamba by further delaying this Court's resolution of his case on the merits. Accordingly, the Court declines to address the objections further in order to expedite Petitioner Tsyamba's requested relief.

docket. Dkt. 8-1 at ¶ 9. On October 14, 2024, Petitioner filed an I-589 application for asylum. Dkt. 3 at ¶ 5.

The parties agree that Petitioner reported for a scheduled ICE check-in at the ICE ERO Spokane office in the summer of 2025.[3] *Id.* at ¶ 6; Dkt. 8 at 3. On his way home, Petitioner alleges he received a message from ICE asking him to return to the office. Dkt. 3 at ¶ 6. Petitioner complied with the request and was detained upon his arrival. *Id.* Petitioner was transferred to NWIPC. *Id.*

On September 11, 2025, an immigration judge ("IJ") granted Petitioner's asylum application. Dkt. 3 at ¶ 7; Dkt. 8 at 4. On September 17, 2025, the Department of Homeland Security ("DHS") appealed the IJ's decision, and the appeal remains pending. Dkt. 1 at 6–7; Dkt. 8 at 4.

Respondents allege Petitioner appeared for a bond hearing on October 22, 2025, with counsel, and the IJ "found no jurisdiction to grant bond given Petitioner was an arriving alien and mandatorily detained as an asylum seeker who passed his credible fear interview pursuant to *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019)." Dkt. 8 at 4. Petitioner remains detained in ICE custody at NWIPC. Dkt. 1 at 14; Dkt. 8 at 4.

## II. PROCEDURAL HISTORY

Petitioner filed the Petition pursuant to 28 U.S.C. § 2241 on December 19, 2025. Dkt. 1. On January 2, 2026, Respondents filed a Return arguing Petitioner's detention is lawful under 28

---

[3] The parties have provided conflicting dates for Petitioner's re-detention, with Petitioner alleging re-detention on June 11, 2025, and Respondents alleging re-detention on July 11, 2025. *See* Petition. Dkt. 1 at ¶ 26 (June 11, 2025); Tsyamba Decl., Dkt. 3 at ¶ 6 (June 11, 2025); Return, Dkt. 8 at 3 (July 11, 2025), Andron Decl., Dkt. 8-1 at ¶ 10 (July 11, 2025). The record does not contain any supporting documentation that resolves the conflict, but the accurate date is not required in this case for the Court to rule upon the legality of the re-detention itself.

1  U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 8. On January 7,

2  2026, Petitioner filed a Traverse. Dkt. 10.

3   The sole ground for habeas relief raised in the Petition is that Petitioner's re-detention

4  without written notice and a legally sufficient pre-deprivation hearing violates his constitutional

5  guarantees of due process under the Fifth Amendment. Dkt. 6; *see also* Dkt. 11. As relief,

6  Petitioner requests that this Court order his release from custody and permanently enjoin his re-

7  detention during the pendency of his removal proceedings absent written notice and a hearing

8  prior to re-detention. Dkt. 1 at 14. Petitioner further requests the return of Petitioner's personal

9  property, including personal identification documents (other than a passport) and employment

10 authorization documents, and an award of attorney's fees and costs under the Equal Access to

11 Justice Act. *Id.*

12  Respondents, however, maintain that Petitioner is not entitled to relief, arguing that this

13 Court lacks jurisdiction to review the Petition under 8 U.S.C. § 1252 and that Petitioner's

14 detention comports with due process.[4] Dkt. 8. The Court disagrees with Respondents on both

15 counts. Accordingly, the Court grants the Petition and orders that Petitioner be released from

16 detention immediately.

---

[4] Respondents also argue Petitioner is subject to mandatory detention pursuant to § 1225(b). Courts have broadly and repeatedly rejected this argument. *See, e.g., P.T. v. Hermosillo*, 2025 WL 3294988, at *4 n.1 (W.D. Wash. Nov. 26, 2025); *A.C.J. v. Hermosillo*, 2025 WL 3907144, at *3 n.2 (W.D. Wash. Dec. 30, 2025), *report and recommendation adopted*, No. 2:25-CV-02486-DGE, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026); *Manuel v. Hermosillo*, 2025 WL 3690778, at *2 (W.D. Wash. Dec. 10, 2025), *report and recommendation adopted*, No. C25-2353-TL-MLP, 2025 WL 3697277 (W.D. Wash. Dec. 19, 2025); *see also Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1324 (W.D. Wash. 2025) (rejecting the Government's recently adopted position that Section 1225(b) applies to any applicant for admission). "The Court therefore rejects the Government's extraordinary request to treat as falling outside of the Constitution's due process guarantee the millions of immigrants who, although they may have entered unlawfully, have established lives here and made this country home." *P.T. v. Hermosillo*, 2025 WL 3294988, at n.1 (quoting *Make the Road N.Y. v. Noem*, 2025 WL 2494908, at *10-13 (D.D.C. Aug. 29, 2025)).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

## III. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). As noted by the parties, courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## IV. DISCUSSION

**A.  The Court Has Jurisdiction to Hear Petitioner's Claim**

At the outset, the Court addresses Respondents' assertion that this Court lacks jurisdiction to consider Petitioner's habeas claim. Respondents argue that several provisions of 8 U.S.C. § 1252 bar this Court from reviewing Petitioner's claim. Dkt. 8 at 7–8. First, Respondents claim Section 1252(g) precludes review of Petitioner's claim because it arises from the Government's decision to commence removal proceedings. *Id.* at 7. Second, Respondents
ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

1  contend Section 1252(b)(9) bars the Court from hearing Petitioner's claim because it challenges
2  an "action taken . . . to remove an alien from the United States." *Id.* (quoting 8 U.S.C. §
3  1252(b)(9)). Third, Respondents argue Section 1252(e)(3) limits judicial review of
4  determinations under Section 1225(b) and their implementation. *Id.* at 8.

5        Other courts in this District have previously rejected similar Section 1252 jurisdictional
6  challenges by the Government in re-detention habeas cases. *See Yildrim v. Hermosillo*, No. 2:25-
7  cv-02696-KKE, 2026 WL 111358 (W.D. Wash. Jan. 15, 2026) (rejecting alleged jurisdictional
8  bar under § 1252(g), § 1252(b)(9), and § 1252(e)(3)); *Palencia v. Hermosillo*, No. 2:25-cv-
9  02669-BAT, 2026 WL 125141, at *3–4 (W.D. Wash. Jan. 16, 2026) (rejecting § 1252(g)
10 jurisdictional bar). The court in *Yildrim* explained:

11     These arguments rest on a misreading of Petitioner's claim. Petitioner's habeas
       petition does not seek review of the Government's decision to commence removal
12     proceedings or to take an action to remove [Petitioner] from the United States, nor
       does [Petitioner] seek to challenge the removal process writ large. [His] petition
13     does not seek review of anything related to [his] removal proceedings. Instead,
       [Petitioner] seeks judicial review of the procedure by which [he] was re-detained
14     without notice and a hearing before a neutral decisionmaker.

15 *Yildrim*, 2026 WL 111358, at *2 (citations omitted); *see, e.g.,* Dkt. 1.

16       The Supreme Court has narrowly interpreted 1252(g)'s jurisdictional limitation to "'three
17 discrete actions': the 'decision or action' to 'commence proceedings, adjudicate cases, or execute
18 removal orders.'" *Palencia*, 2026 WL 125141, at *3–4 (quoting *Reno v. Am-Arab Anti-*
19 *Discrimination Comm.* (AADC), 525 U.S. 471 482 (1999)). And this limitation does not
20 otherwise extend to "the universe of deportation claims" such that it would "sweep in any claim
21 that can technically be said to 'arise from' these three actions." *Id.* (quoting *Jennings v.*
22 *Rodriguez*, 583 U.S. 281, 294 (2018)).

23
24

Respondents have not offered any relevant authority that persuades this Court to reach the alternative conclusion that 1252(g) extends to Petitioner's discrete challenge to his re-detention without either notice or a hearing before a neutral decisionmaker. Accordingly, the Court rejects the Respondents' jurisdictional challenge based upon Section 1252 and finds this Court has jurisdiction to review the merits of the Petition. Dkt. 1.

**B.     Petitioner's Re-Detention does not Comport with Fifth Amendment Due process**

The parties applied the *Mathews* factors in their briefing on procedural due process, as have other Washington district courts in similar immigration re-detention cases. Dkt. 1 at ¶ 54; Dkt. 8 at 9–12; *Velazquez v. Wamsley*, No. 2:25-cv-02641-JHC, 2026 WL 84223, at *2 n.2 (W.D. Wash. Jan. 12, 2026) (collecting cases). Accordingly, the Court addresses each *Mathews* factor in turn.

       1.     <u>Petitioner's Liberty Interest at Stake</u>

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee"). That Petitioner was re-detained and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

Such interest was only strengthened by the Government's decision to release him from immigration custody in May 2024. *See Velazquez*, 2026 WL 84223, at *4 (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)). For more than a year, Petitioner lived in the United States without incident. During this time, he resided in the community and complied with all the conditions of his parole.[5] "His release thus allowed him to gain[ ] a foothold in the United States and develop ties in this country, thereby strengthening his constitutional right to due process. In revoking Petitioner's release, the Government has undeniably inflicted a grievous loss of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause." *Id.* at *4 (internal quotations and citations omitted).

While Respondents argue this liberty interest does not extend to noncitizens participating in conditional release in the same way it does to citizens, Dkt. 8 at 9–10, Respondents also acknowledge courts in this District have held otherwise. *Id.* at 2 n.2 (citing Dkt. 1 at 1–2 (collecting cases)).[6] "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe*, 787 F. Supp. 3d at 1093)).

Under the circumstances of this case, the Court finds Petitioner's interest in his liberty is constitutionally protected here. Accordingly, the first *Mathews* factor favors Petitioner.

---

[5] Notably, Respondents have not offered any evidence, or specific allegations, that this Petitioner violated any of the terms of his parole. Nor have they provided any ostensible basis for re-detaining Petitioner beyond making an "individual discretionary determination to revoke Petitioner's Parole" with ICE having "a legitimate, non-punitive interest" in his detention. Dkt. 8 at 9. As a result, the Respondents' argument that Petitioner's initial release was subject to conditions of release and Petitioner knew he could be re-detained, especially if he violated the conditions of parole, is inapplicable here. *See* Dkt. 8 at 10.

[6] After the completion of briefing in this case, there have been at least three additional decisions from this district finding the re-detention of a noncitizen without sufficient notice or the opportunity to be heard violates due process under the Fifth Amendment. *See Palencia*, 2026 WL 125141, at *9; *Yildirim*, 2026 WL 111538, at *4–5; *Velazquez*, 2026 WL 84223, at *5.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

2. <u>Risk of Erroneous Deprivation of Petitioner's Liberty</u>

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and the probable value, if any, of additional procedural safeguards. *Mathews*, 424 U.S. at 335. Here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of any justification for Petitioner's re-detention or opportunity to be heard at a pre-detention hearing.

Courts in this District have found factual disputes concerning the Government's justification for re-detention should be adjudicated *before* and not following such action. *See Yildirim*, 2026 WL 111358, at *4. However, in this case, Respondents failed to provide any justification for revoking Petitioner's release, either contemporaneously with his re-detention or after the fact in the briefing here. There is no indication that Petitioner violated the terms of his release or that there were any other circumstances requiring his immediate re-detention.

Respondents' sole argument is that there was no statutory requirement for the Government to provide Petitioner with a pre-detention hearing, and that this Court should not create one. Dkt. 8 at 10 (citing *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022)). However, the protections of due process are not exclusively based in statute. *See, e.g., Vargas v. Jennings*, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (that a petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process). Respondents have failed to address the broader due process implications of Petitioner's loss of liberty without notice of the reasons for his re-detention or the opportunity to refute those reasons at a pre-detention hearing. *S.S. v. Hermosillo*, No. 2:25-cv-2684-MLP, 2026 WL 183565, at *3 (W.D. Wash. Jan. 23, 2026); *Velazquez*, 2026 WL 84223, at

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

*5. The probable value of notice and a pre-detention hearing is particularly high where Petitioner is entirely unaware of the basis for his re-detention.

Given Petitioner's pending asylum claim, his compliance with the conditions of release, and the fact that he has not received notice of the Government's basis for his re-detention or an opportunity to respond, the Court finds the second *Mathews* factor favors Petitioner.

### 3. Government Interest in Civil Detention

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing. *Mathews*, 424 U.S. at 335.

As discussed above, Respondents have articulated no legitimate countervailing interest to justify Petitioner's re-detention in this case. *See Ramirez Tesara,* 800 F. Supp. 3d at 1137 (finding third factor favors petitioner where Government cites no legitimate interest for detention without a hearing or evidence that a pre-detention hearing would impose an administrative or financial burden). Respondents have not challenged Petitioner's compliance with any of the terms of his parole, nor suggested Petitioner poses a significant flight or public safety risk. Moreover, as Petitioner noted in his declaration, he has a particularly compelling reason for continued compliance as his attorney seeks to have his initial grant of asylum affirmed on appeal. Dkt. 3 at ¶ 8. "The fact that Respondents have not articulated a reason for redetaining Petitioner[]—who has no criminal history, timely filed for asylum, obtained work authorization, and complied with [his] conditions of release—undermines any suggestion that Respondents' interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable." *S.S.*, 2026 WL 183565, at *3.

Given the totality of the circumstances, the Government's interest in re-detaining a previously released, compliant noncitizen without a hearing is low. *See Ledesma Gonzalez v.*

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

*Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Thus, the third *Mathews* factor also weighs in Petitioner's favor.

In sum, all three *Mathews* factors favor Petitioner. The Court finds that Petitioner had a protected liberty interest in his continued release from custody and that due process requires Petitioner to receive sufficient notice and a hearing from an immigration judge *before* he can be re-detained. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (finding a post-deprivation bond hearing cannot serve as an adequate safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty) (citation omitted). The appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Yildrim*, 2026 WL 111358, at *5 (citing *Doe*, 787 F. Supp. 3d at 1089).

## V.    CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

(1)    Petitioner's habeas Petition, Dkt. 1, is **GRANTED**;

(2)    Respondents shall release Petitioner from custody immediately under the conditions of the prior parole agreement;

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

(3) Respondents shall return Petitioner's personal property to him upon release, including his personal identification documents, other than his passport, and employment authorization documents;

(4) Respondents may not re-detain Petitioner without advance written notice and a pre-detention hearing before a neutral decisionmaker;

(5) Respondents shall file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner Tsyamba has been released from custody and providing the date and time of his release; and

(6) Petitioner may file a motion for his attorneys' fees associated with the instant Motion by February 12, 2026. A response, if any, will be due February 20, 2026.

Dated this 29th day of January, 2026.

Grady J. Leupold
United States Magistrate Judge